**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-2456

ERIC KNIGHT, On Behalf of Himself and All
Others Similarly Situated,

      Plaintiff,

V.

EXCELL SERVICES, LLC

      Defendant.

---

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

---

Plaintiff ERIC KNIGHT ("Knight" or "Plaintiff"), on behalf of himself and all other similarly situated affected employees, files this Original Class Action Complaint against Excell Services, LLC ("Excell" or "Defendant"), showing in support as follows:

### I.      NATURE OF THE CASE

1.      This is a civil action brought by Plaintiff pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act") for Defendant's failure to give the required WARN Act written notice to Plaintiff and similarly situated individuals (the "Class Members") in connection with the recent Mass Layoff relative to oilfield workers at the single site of employment in connection with Defendant's Wray, Colorado operations.

2.      In the alternative, Plaintiff brings this WARN Act case for Defendant's failure to give the required WARN Act written notice to Plaintiff and the Class Members in connection with recent Plant Closing relative to oilfield workers at the single site of employment or

*Plaintiff's Original Complaint*                                      1

operational units within that single site of employment in connection with Defendant's Wray, Colorado operations.

3.      Accordingly, Defendant is liable under the WARN Act for failing to provide Plaintiff and the Class Members written notice, including 60 days' advance written notice, as required by the WARN Act.

## II.      THE PARTIES, JURISDICTION AND VENUE

### A.      Plaintiff Eric Knight

4.      Knight is a natural person who resides in Lincoln County, Nebraska. He has standing to file this lawsuit.

5.      Knight was employed by Defendant as an hourly paid oilfield worker where he worked for Defendant on drilling rigs in and around Western Nebraska as part of Defendant's oilfield operations in the DJ Basin oilfield play. The DJ Basin covers a geographic region of Eastern Colorado, Western Nebraska and Northwest Kansas.

6.      Knight's employment with Defendant began on or about December 2013. Knight's employment with Defendant was verbally terminated without any advance written warning on or about December 22, 2014 without 60 days' advance written notice. At all times relevant between those dates, Knight was a full time employee of Defendant.

### B.  Class Members

7.      The Class Members are affected employees who are similarly situated to the Plaintiff, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at Defendant's single site of employment for  Plaintiff and Class Members in the 30 day or 90 day period from Knight's employment loss.

8.      Alternatively, the Class Members are affected employees who are similarly situated Plaintiff, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational units at/within such single site of employment for Plaintiff and Class Members in the 30 day or 90 day period from Knight's employment loss.

9.      On information and belief, the single site of employment for purposes of the WARN Act is Defendant's principal place of business/drilling rig yard in Wray, Colorado.

10.      Alternatively, the single site of employment for purposes of the WARN Act is comprised of the drilling rigs owned and/or operated by Defendant on which Plaintiff and Class Members worked in and around Wray, Colorado and/or the area Defendant references as the DJ Basin.

11.      Alternatively, should discovery reveal that there is more than one single site of employment for the Plaintiff and Class Members, then Plaintiff reserves the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification consistent with 20 C.F.R. § 693.3(i).

C.      **Defendant Excell Services, LLC**

12.      On information and belief, Defendant is a Colorado limited liability company incorporated under the laws of the State of Colorado.

13.      During all times relevant to this lawsuit, Defendant has done business in the State of Colorado.

14.      On information and belief, during the time period relevant to this lawsuit, Defendant's principal place of business is and has been at 36629 US Hwy 385, Wray, Colorado, 80758. Defendant identifies that address as its corporate office.

15.     Defendant may be served with summons through its registered agent, Andrew Ray Weaver, 34467 County Road HH.5, Wray, Colorado 80758.

**D.     <u>Jurisdiction and Venue</u>**

16.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

17.     During all times relevant to this lawsuit, Defendant has done business in the State of Colorado and continues to do business in the State of Colorado.

18.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims, and the claims of the Class Members, on federal law, namely 29 U.S.C. §§ 2101-2109.

19.     Venue is proper in the United States District Court for the District of Colorado because Defendant identifies that its main corporate office is located in this judicial district at 36629 US Hwy 385, Wray, Colorado, 80758. On information and belief, that location is Defendant's principal place of business. Furthermore, at all relevant times, Defendant transacted business in this District and continues to transact business in this District. 29 U.S.C. § 2104(a)(5).

### III.     <u>FACTUAL BACKGROUND</u>

20.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

21.     On information and belief, and at all times material to this action, Defendant has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given.

22.     Prior to the Mass Layoff, or in the alternative, Plant Closing, that forms the basis of this action, Defendant employed more than 100 employees, exclusive of part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given, at the site of employment made the subject matter of this lawsuit.

23.     During the time period before Plaintiff's employment losses, Defendant operated several drilling rigs connection with its drilling operations in and around the DJ Basin oilfield play, including drilling rigs in and around Wray, Colorado. Defendant refers to this area as the DJ Basin of Colorado, Nebraska and Kansas to the general public in addition to its customers. (*see* Defendant's website at http://www.excell-llc.com/index.html, last accesses on November 5, 2015). The primary business location and rig yard for this area was/is in Wray, Colorado

24.     Each such drilling rig consisted of multiple crews that worked various shifts. A typical drilling rig included, during a hitch[1] or work crew rotation, one or two tool pushers/rig managers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pusher(s)/rig manager(s). So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees for all hitches, exclusive of support personnel such as mechanics, drivers, and administrative support.

25.     Drilling rigs worked on by Plaintiff and Class Members regularly exchanged crew members between the different drilling rigs. Sometimes those crew member changes occurred during a hitch. Additionally, after a hitch, one or more employees would regularly be assigned to a different drilling rig thereby changing the crew composition for more than one drilling rig.

---

[1] Hitches generally lasted one week or two weeks, depending on the location.

26.    Drilling rigs worked on by Plaintiff and Class Members regularly exchanged equipment, such as tools, between the different drilling rigs.

27.    Management and training of Plaintiffs and Class Members was conducted through Defendant's Wray, Colorado business location and yard.

28.    Plaintiff was verbally notified by Defendant on or about December 30, 2014 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Plaintiff was not discharged for cause, did not voluntarily resign, and did not retire.

29.    Plaintiff was subjected to a Mass Layoff, or in the alternative, Plant Closing.

30.    Plaintiff worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Plaintiff, those workers are/were subject to Defendant's Mass Layoff, or in the alternative, Plant Closing made the subject matter of this lawsuit.

31.    On and around the time of their verbal notifications of employment losses, the Plaintiff learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Plaintiff's employment losses, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

32.    On information and belief, the employment losses at the single site of employment for Plaintiff and Class Members occurred within a 30 day period of Knight's

employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Knight's employment losses, such employment losses not being the result of separate and distinct actions and causes.

33.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce at the single site of employment for the Plaintiff and Class Members experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce at the single site of employment for Plaintiff and Class Members had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

34.     The exact number of employees who experienced an employment loss at the single site of employment for Plaintiff and Class Members within a 30 day and 90 day period of Knight's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the single site of employment for the Plaintiff and Class Members is information that is currently known only to Defendant.

35.     Plaintiff and Class Members were not provided with 60 days' advance written notice, in compliance with 29 C.F.R. § 639.7 by Defendant of their employment loss, Mass Layoff or Plant Closing

36.     Plaintiff and Class Members were not provided with 60 days' advance written notice prior to their employment loss of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The

expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.   WARN ACT CLAIMS

37.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

38.     At all relevant times, Plaintiff and the Class Members were "full-time employees" of Defendant as that term is used in the Warn Act.

39.     At all relevant times, Defendant was and is an employer under the WARN Act. 20 C.F.R. § 639.3(a).

40.     At material times, Defendant employed, and continues to employ, 100 or more employees, excluding part-time employees.

41.     On information and belief, Defendant's Wray, Colorado office/rig yard constituted a single site of employment for the Plaintiff and Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

42.     Alternatively, Defendant's drilling rigs and/or rig yard operating in the DJ Basin are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

43.     Alternatively, Plaintiff and Class Members worked at a single site of employment in connection with a truly unusual organizational situation as shown by the facts.  20 C.F.R. § 639.3(i) (8).

44.     Alternatively, each drilling rig operating at/from/through relevant single site of employment for Plaintiff and Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

45.     Plaintiff reserves the right to amend the claimed "single site of employment" as determined by the facts in this lawsuit that are consistent with the broad definition of that phrase as set forth in 20 C.F.R. § 639.3(i).

A.  **Mass Layoff**

46.     During a 30 day or 90 day period from Knight's employment loss, Defendant ordered/executed a "Mass Layoff" at Defendant's single site of employment for Plaintiff and Class Members. 20 C.F.R. §§ 639.3(c) & 639.5(a)(i).

47.     Plaintiff and Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of the claims in this lawsuit by Plaintiff and Class Members. 20 C.F.R. § 639.3(f).

48.     On information and belief, 1/3 of the employees at Defendant's single site(s) of employment for Plaintiff and Class Members, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

49.     Plaintiff and Class Members are aggrieved and affected employees under the WARN Act in connection with that Mass Layoff. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Plaintiff and Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of the Mass Layoff made the subject matter of the claims of Plaintiff and Class Members.

### B.   Plant Closing

50.     Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of the employment losses of Knight, Plaintiff and Class Members suffered a "Plant Closing." 20 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 20 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through Defendant's single site of employment for Plaintiff and Class Members is/was an operational unit of such single site of employment. 20 C.F.R. § 639.3(j).

51.     Plaintiff and Class Members are aggrieved and affected employees under the WARN Act in connection with that Plant Closing. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Plaintiff and Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of the Plant Closing made the subject matter of the claims of Plaintiff and Class Members.

### C.   No Written Notice of Mass Layoff or Plant Closing

52.     Plaintiff and Class Members were not provided with 60 days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff or Plant Closing pursuant to 20 C.F.R. § 639.7, and were not provided with advance written notice of each requirement of 20 C.F.R. § 639.7.

53.     On information and belief, Defendant did not notify the Colorado agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the Mass Layoff or Plant Closing made the subject matter of the claims of Plaintiff and Class Members.

54.     On information and belief, Defendant did not notify the Colorado agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the termination of the employment Plaintiff and Class Members.

**D.  Damages**

55.     As a result of Defendant's violations of the WARN Act, Plaintiff and Class Members have suffered damages. Plaintiff and Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

## V.     CLASS ACTION ALLEGATIONS

56.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

57.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5) seeking certification of a class, classes, or sub-classes as deemed appropriate by the Court.

58.     Plaintiff bring this action on behalf of himself and all other similarly situated employees. Plaintiff seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through the single site of employment for Plaintiff and Class Members in connection with Defendant's drilling operations who experienced an employment

loss during the 30 or 90 day period from December 30, 2014 without 60 days' advance written notice required by the WARN Act." Plaintiff requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification and/or amended pleading to the extent discovery reveals that there is a more appropriate class definition.

59.     Plaintiff and Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

60.     Plaintiff's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

61.     On information and belief, the Class Members exceed 50 in number, and joinder is therefore impracticable. The precise number of Class Members and their addresses are readily determinable from Defendant's records.

62.     There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

a. Whether the provisions of the WARN Act apply to the Plaintiff and Class Members;

b. The "single site of employment" of Plaintiff and Class Members;

c. Whether Defendant failed to provide the notices required by the WARN Act to Plaintiff and Class Members; and

d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice.

63.     The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

64.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

65.     Plaintiff is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the required written notice. Plaintiffs is therefore a member of the class. Plaintiff is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Plaintiff is an adequate representative of the class and has the same interests as all of its members. Further, Plaintiff's claims are typical of the claims of all members of the class, and he will fairly and adequately protect the interests of the absent members of the class. Plaintiff and his counsel do not have claims or interests that are adverse to the Class Members.

66.     Further, class action treatment of this lawsuit is authorized and appropriate under the WARN Act 29 U.S.C. § 2104(a)(5), which clearly provides that a plaintiff seeking to enforce

liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI.   JURY DEMAND

67.     Plaintiff demands a jury trial.

## VII.       DAMAGES AND PRAYER

68.     Plaintiff asks that Plaintiff and the Class Members be awarded a judgment against Defendant or order(s) from the Court for the following:

     a.    An order certifying that the action may be maintained as a class action/class actions under Federal Rule of Civil Procedure 23, including sub-classes as appropriate;

     b.    Designation of Allen R. Vaught, Baron & Budd, P.C., as Class Counsel for each Class;

     c.    All damages allowed by the WARN Act, including back pay and benefits as provided by 20 U.S.C. § 2104;

     d.    Pre-judgment and post-judgment interest;

     e.    Costs;

     f.    Reasonable attorney's/attorneys' fees; and

     g.    All other relief to which Plaintiff and the Class Members are entitled.

Respectfully submitted,

By:     s/Allen R. Vaught
        Allen R. Vaught
        TX Bar No. 24004966
        Ryan J. Burton
        TX Bar No. 24050362
        Melinda Arbuckle
        TX Bar No. 24080773
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone

(214) 520-1181 – Facsimile
avaught@baronbudd.com
rburton@baronbudd.com
marbuckl@baronbudd.com

ATTORNEYS FOR PLAINTIFFS